IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY GERALD BENNETT, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-0402-N |
| | § | |
| CARDAN SPENCER, *et al.*, | § | |
| | § | |
|    Defendants. | § | |

## ORDER

     This Order addresses Defendant Christopher Watson's motion for summary judgment [29] and Defendant Cardan Spencer's motion for summary judgment [32]. Because there are questions of fact concerning Watson and Spencer's (collectively, "Moving Defendants") entitlement to qualified immunity, the Court denies both motions.[1]

### THE ORIGIN OF THE DISPUTE

     Plaintiff Bobby Gerald Bennett asserts under 42 U.S.C. § 1983 claims for false arrest and excessive use of force in violation of the Fourth Amendment to the United States Constitution. Bennett's claims arise out of an encounter in which Moving Defendants, then employed as Dallas Police Officers, responded to an emergency call involving Bennett. As will be discussed in greater detail below, Spencer shot Bennett in the abdomen, resulting in a severe injury that required hospitalization. Spencer and Watson subsequently submitted

---

[1] The Court also grants Watson's motion for extension of time to file reply [68].

ORDER – PAGE 1

affidavits detailing the incident and a warrant for Bennett's arrest was issued for aggravated assault on a public servant.

After the charges against Bennett were dropped, he brought this action against Spencer and Watson alleging Spencer had used excessive force in shooting him, and that both had violated Bennett's right to be free from false arrest by giving false statements and filing false affidavits. Moving Defendants answered Bennett's complaint and asserted qualified immunity. The Court ordered Bennett to file a Ruly 7(a) reply to Moving Defendants' assertions of qualified immunity. After Bennett filed the reply, Moving Defendants moved for summary judgment. The motions are now ripe for consideration.

## I. THE LEGAL STANDARDS

### A. *Motions for Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his

favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Qualified Immunity

"Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the

need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court considers two questions. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## II. THE SHOOTING AND SUBSEQUENT ARREST

On October 14, 2013, at around noon, Officers Spencer and Watson responded to a report of a mentally unstable person on Crimson Court, in Dallas, Texas.[2] Pl.'s App. 005, 027 [45–57]. Dispatch communicated to the officers that the subject of the report, later confirmed to be Bennett, was a paranoid schizophrenic in a dispute with his mother, was potentially in possession of a knife, and had stated that he wanted to be shot by the police. *Id.* 035, 057, 070. What happened when the officers arrived is subject to dispute.

### *A. The Officers Provide An Account of the Shooting*

In the immediate aftermath of the shooting, both officers provided accounts that would conflict with future evidence. Watson gave his account in the form of an affidavit (the "Watson Affidavit") on the day of the shooting to a Detective Richard Duggan. Watson App. 006. In his affidavit, Watson swore that the officers arrived to find Bennett seated in a rolling chair. *Id.* Watson swore Bennett told the officers "you all are gonna need more officers out here" in a confrontational tone. *Id.* Watson swore that as the officers approached, Bennett pushed his chair back away from the officers and stood up, holding a large knife. *Id.* When the officers were approximately twenty feet away from Bennett,

---

[2]The facts recited here are drawn from the parties' briefs and the summary judgment evidence before the Court. Spencer objects to the admissibility of much of Bennett's summary judgment evidence. *See* Spencer's Reply Br. 2–6 [74]. The Court will address objections individually should the Court rely on evidence to which Spencer objects.

To the extent Spencer's hearsay objections refer to the out-of-court nature of deposition testimony itself, deposition testimony is not considered hearsay on a motion for summary judgment. *See, e.g.*, *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1107 (9th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). Thus, the Court overrules Spencer's hearsay objections to the extent they are based only on the deponents' assertions.

commanding him "repeatedly" to drop the knife, Watson swore that Bennett "raised the knife and took an aggressive stance." *Id.* Watson swore that Bennett "then extended the knife forward away from his body towards [the officers] and took approximately two steps towards [the officers]." *Id.* Finally, Watson stated that as Bennett stepped towards the officers, "he continued to keep the knife raised and pointed towards [the officers] in an aggressive stance." *Id.* It was at that point, Watson stated, that Spencer fired his weapon. *Id.*

Meanwhile, Spencer, the shooter, similarly told officers who arrived on the scene that Bennett had come at him with a knife. Pl.'s Resp. Spencer Mot. Summ. J. 31 [44] (citing Pl.'s App. 071).[3] Spencer gave the same report to a Sergeant Christopher Harry. Pl.'s App. 065.[4] Although Spencer now denies he reported the incident this way, *see id.* at 030, this account does not differ substantially from the account that Watson provided.

The probable cause affidavit that was eventually presented to a magistrate judge to support an arrest warrant for Bennett, executed by an Officer Jo Booker, referenced

---

[3]Spencer objects to the portion of Officer Spearman's deposition testimony that Bennett relies on to support his allegation that Spencer reported to other officers that Bennett had come at him with a knife. The Court finds particularly relevant p. 18, l. 21 – p. 19 l. 7 of Officer Spearman's deposition, located on page 071 of Bennett's appendix. The Court overrules the hearsay objection because Spencer's underlying statements are not hearsay under Federal Rule of Evidence 801(d)(2)(A). Moreover, Spencer's underlying assertions are not offered to prove their truth. In fact, they are offered to prove the exact opposite – that Spencer lied. The Court also overrules Spencer's relevance objection because whether Spencer made false statements is material to Bennett's claim for false arrest.

[4]The Court overrules Spencer's hearsay objection to p. 18 l. 3–6 of Sergeant Harry's deposition for the same reason discussed above. *See supra* n. 3.

ORDER – PAGE 6

statements provided by both Spencer and Watson. *Id.* at 118–119.[5] Watson now acknowledges that his affidavit served as the factual basis for the probable cause affidavit that was presented to the magistrate judge to support an arrest warrant for Bennett. *Id.* at 042–043. Moreover, the probable cause affidavit relies on statements allegedly made by Spencer following the shooting. *Id.* at 118-119. An arrest warrant for Bennett was eventually issued, charging him with aggravated assault on a public servant. *Id.* at 120.[6]

### B. Video Evidence Contradicts the Officers' Accounts

After the officers provided their accounts of the shooting, Bennett's neighbor Maurice Bunche came forward with security camera footage that had been recorded by a camera on his property.[7] *See* Oct. 14, 2013 Surveillance Video.[8] Although the video does not include audio, it provides a relatively clear video depiction in color of the incident, taken from a side angle. At 12:05 PM, Bennett rolled an office-type chair into the cul-de-sac and sat down in

---

[5] Spencer objects to the probable cause affidavit because it is based on the personal knowledge of others provided to the warrant's affiant. The Court does not rely on the affidavit to establish the truth of any factual assertions it makes, but rather to establish that the affiant did rely on Watson's and Spencer's statements. Accordingly, the Court overrules this objection.

[6] Spencer objects that the arrest warrant is inadmissible hearsay in its entirety. *See* Spencer's Reply 6. The Court does not rely on the arrest warrant to prove any of the facts asserted therein, but only to prove the warrant was issued. The Court finds the warrant is admissible for this limited purpose under Federal Rule of Evidence 803(8).

[7] Watson contends he knew of the existence of a surveillance video when he gave the affidavit that would serve as the factual basis for the arrest warrant. Watson App. 002.

[8] Copies of the DVDs containing the security video feed were mailed to the Court with copy to opposing counsel. They are referenced in the ECF record as Plaintiff's Exhibit 2 [45-2] and Watson's Exhibit B [28-2].

the chair. *Id.* at 12:05:15. The officers arrived on scene around 12:19 PM and parked their squad car facing the seated Bennett, at a distance of approximately fifty feet away. *Id.* at 12:19:55. The officers exited their vehicle nearly immediately after arriving and began to approach Bennett. *Id.* at 12:20:00. Almost immediately after the officers began their approach, Bennett, still sitting, used his feet to quicky roll his chair back away from the officers, and then stood up. *Id.* at 12:20:05; Watson App. 002. Although the video is unclear, Bennett concedes he was holding a pocket knife in his right hand. Pl.'s App. 029. At this point, though not entirely clear, the officers appear to be at a distance of approximately twenty to thirty feet from Bennett. Surveillance Video at 12:20:10.

    The officers then commanded Bennett to drop the knife he was holding. Pl.'s App. 022. Bunche, who was a witness to the shooting, alleges he heard only one such command. *Id.* Moreover, Bunche did not hear Bennett say anything in response to the officers. *Id.* After Bennett stood up, the officers drew their service weapons. Surveillance Video at 12:20:12; Watson App. 002. Although the precise order of events is not entirely clear, the video depicts that Bennett crouched or flinched slightly. Surveillance Video at 12:20:15. Around the same time, still at a distance of approximately twenty to thirty feet from Bennett, Officer Spencer discharged his service weapon four times, striking Bennett in the abdomen. *Id.* at 12:20:16; Spencer App. 003; Watson App. 002. Bunche alleges that he did not see Bennett move at all prior to being shot. Pl.'s App. 002. The remainder of the surveillance video depicts the officers handcuffing Bennett and waiting for other officers and paramedics to arrive.

After the video's release, charges against Bennett were dropped. Watson was suspended from the police force for fifteen days for violating the Dallas Police Department's standard operating procedures for interacting with mentally ill persons and for making false statements in his affidavit. Watson App. 003. Spencer was terminated from the Dallas Police Department for violating the standard operating procedures for interacting with mentally ill persons and for violating the excessive use of force policy. Pl.'s App. 036.[9] Dallas Police Chief David Brown also elected to bring aggravated assault charges against Spencer. *Id.* at 104–105.

### III. THE COURT DENIES WATSON'S MOTION FOR SUMMARY JUDGMENT

Watson moves for summary judgment, arguing he is entitled to qualified immunity from Plaintiffs' Section 1983 claim for false arrest.

#### *A. Bennett Pleads a Constitutional Violation*

To prevail on a false arrest claim, a plaintiff must demonstrate that the police lacked probable cause to arrest him. *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001) (citation omitted) (internal quotation marks omitted). Watson is entitled to qualified immunity "if a reasonable officer in his position could have

---

[9]The Court overrules Spencer's relevance objection to this testimony.

believed that, in light of the totality of the facts and circumstances of which [Watson] was aware, there was a fair probability that [Bennett] had committed or was committing an offense." *Haggerty*, 391 F.3d at 656.

Bennett's claim against Watson is based on the allegation that Watson made false statements in support of the probable cause affidavit. Generally, "the approval of a warrant by an independent magistrate judge or like official 'breaks the causal chain and insulates the initiating party' from liability." *Anderson v. City of McComb, Miss.*, 539 F. App'x 385, 386–87 (5th Cir. 2013) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). However, the United States Supreme Court has recognized a Fourth Amendment violation where a warrant is obtained through "deliberate falsehood or . . . reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see also Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997) (extending *Franks* liability to statements made by an individual other than the warrant affiant), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997), *as recognized in Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999). A Plaintiff establishes a *Franks* claim by demonstrating (1) an officer gave a knowingly or recklessly false statement to procure a warrant, and (2) the warrant would not establish probable cause without the false information. *Hart*, 127 F.3d at 442 (citing *Franks*, 438 U.S. at 171).

***1. Bennett Produces Evidence Watson Knowingly Swore a False Affidavit.*** – Watson does not dispute that Bennett's arrest warrant contained misrepresentations that were based on his post-shooting affidavit. Rather, Watson argues he is entitled to qualified immunity

because he made a reasonable, innocent mistake in recollecting the facts of the shooting. *See* Watson's Br. Supp. Mot. Summ. J. 13–15 [28]. Watson relies primarily on *Blackwell v. Barton*, 34 F.3d 298 (5th Cir. 1994). *Barton* was a mistaken identity case in which the defendant-officer had arrested, pursuant to a valid warrant, a person who matched the description of – but was not in fact – the person named in the warrant. *Id.* at 300–01. In determining whether the officer was entitled to qualified immunity, the Court assessed whether the officer's mistake as to identity was reasonable. *Id.* at 303. Finding that a reasonable officer could have mistaken the plaintiff for the individual named in the warrant, the Court held qualified immunity was proper. *Id.* at 304, 305.

Watson's appeal to *Barton* is misguided because it skips over a factual question that was assumed in *Barton*. In *Barton*, it was undisputed that the officer had actually made a mistake – the only question was whether the mistake was reasonable. In this case, however, a fact question remains as to whether Watson made a mistake in recounting the shooting, or whether he intentionally misrepresented those events. Only after this question is answered can a determination be made as to whether any mistake was reasonable.

Watson's explanation of the discrepancies between the surveillance video and his affidavit fails to dispose of fact questions as to whether he was mistaken about the events of the shooting or lied about them. Watson now claims his statement that Bennett raised the knife at the officers, assumed an aggressive stance, and then took two steps toward the officers resulted from the movement of Bennett's body upon being shot by Spencer. *See* Watson's Br. Supp. Mot. Summ. J. 10. Watson also claims that his errors regarding

Bennett's movements resulted because he did not realize Spencer had fired his weapon. *Id.* at 9. Finally, Watson asserts that any motive he had to lie would have been diminished by the time he swore his affidavit because he knew by then that video existed of the shooting, although he hadn't seen it. *Id.* at 5.

Bennett also presents evidence that tends to rebut Watson's assertions. For instance, Chief of Police David Brown testified that he did not believe Watson's explanation for why his affidavit differed from the events depicted in the surveillance video. *See* Pl.'s App. 098. Chief Brown acknowledged that while it was possible to misremember the order of events in such a situation, he could not understand Watson's remembering events that did not happen. *Id.* Chief Brown acknowledged that he viewed Watson's statement as having been made with some level of intent to deceive. *Id.* at 097.

Given the evidence discussed above, the Court finds that a reasonable jury could disbelieve Watson's proffered explanation for why he inaccurately described the shooting, and instead conclude he intentionally lied. For instance, Watson's assertion that he simply failed to perceive that Spencer had fired his weapon multiple times while standing in close proximity to him gives reason to doubt his explanation. Watson's assertion that he mistook Bennett's body falling to the ground as Bennett taking two steps toward the officers also facially raises a fact question. The Court is mindful that witnesses often misremember high-intensity situations and Watson's knowledge that surveillance video of the event existed would plausibly diminish his motive to lie. Nevertheless, at this stage the Court declines to

resolve these factual questions in Watson's favor. Thus, Bennett at the least establishes a question of fact as to whether Watson gave false statements in support of an arrest warrant.

***2. Probable Cause to Arrest Bennett Would Not Have Existed Absent the False Testimony.*** – The second prong of the *Franks* analysis requires the Court to consider whether, stripped of the false allegations, the arrest warrant nevertheless would have established probable cause. *Hart*, 127 F.3d at 442. "Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party." *Barton*, 34 F.3d at 303.

From the record, it is clear the affidavit supporting the arrest warrant, stripped of the allegedly false statements, would not have established probable cause to arrest Bennett for aggravated assault on a public officer. As relevant to Bennett, a person commits aggravated assault against a public officer if he (1) intentionally or knowingly threatens a public officer with imminent bodily injury, (2) while using or exhibiting a deadly weapon. TEX. PENAL CODE §§ 22.01, 22.02. Stripped of the allegedly tainted allegations, the affidavit supporting the arrest warrant alleges merely that a mentally ill person was holding a pocket knife at a distance of twenty to thirty feet from police officers, and that he did not drop the knife after a single command. Absent a truthful allegation that Bennett advanced toward the police or

threatened them in any way, probable cause to support an arrest for aggravated assault is lacking.[10]

### B. The Right Was Clearly Established

A right is "clearly established under the second step of the qualified immunity analysis" if "'the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Flores v. City of Palacios*, 381 F.3d 391, 399–400 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

The "operation of this standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be defined." *Creigh*ton, 483 U.S. at 639. While on an abstract level each individual has a clearly established right to be free of unreasonable searches and seizures, a "test of 'clearly established law' . . . applied at this level of generality . . . would bear no relationship to the 'objective legal reasonableness'" portion of the test. *Id.* "Plaintiffs would be able to convert the rule of qualified immunity . . . into a

---

[10]Watson raises a related argument in his reply that the officers had probable cause to arrest Bennett for another, unidentified offense at the time he was shot. *See* Watson's Reply 7–8 [69] (citing *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). However, *Deville* by its own terms holds that if an arresting officer had probable cause to arrest "*for any of the charges made*," then a false arrest claim fails. 567 F.3d at 164 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) (emphasis added). Bennett was not charged with anything other than aggravated assault on a public officer. Thus, there are no other charges to which the Court can look for determining whether probable cause existed.

rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* Instead, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

Watson's conduct, viewed through a lens favorable to Bennett, violated clearly established rights. *Franks* and *Hart* make it clear that an official may not give false statements that support the issuance of an arrest warrant. *Franks*, 438 U.S. at 171; *Hart*, 127 F.3d at 448–49 ("A governmental official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit."). Accordingly, the Court concludes the law at the time of the shooting was sufficient to give Watson fair warning that filing a false affidavit detailing a shooting was a violation of Bennett's rights. Accordingly, the Court denies Watson's motion for summary judgment.

### IV. THE COURT DENIES SPENCER'S MOTION FOR SUMMARY JUDGMENT

Spencer asserts he is entitled to qualified immunity as to Bennett's claims for false arrest and excessive force.

#### A. Plaintiff's Claim for Excessive Force

*1. Bennett Establishes a Violation of a Constitutional Right.* – "To establish an excessive use of force claim, a plaintiff must demonstrate '(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.'" *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). It can hardly be

argued that the first prong is not satisfied. The fact that Bennett was shot is uncontroverted. *See* Spencer's App. 004 [34-1]. Thus, the Court considers only whether the force was excessive to the need and unreasonable.

To determine whether a use of force is reasonable, the Court asks "whether the totality of the circumstances justified [that] particular sort of search and seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985). In this case, it is clear that Spencer employed deadly force by firing his gun at Bennett. *Gutierrez v. City of San Antonio*, 139 F. 3d 441, 446 (5th Cir. 1998) ("[G]uns represent the paradigmatic example of 'deadly force' . . . ."). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted).

The undisputed facts on the record demonstrate that as Spencer approached, Bennett rapidly pushed his chair away from the officers and stood up. The officers were also aware that Bennett was mentally unstable, and Bennett was holding a pocket knife in his right hand. Beyond that, there are a number of factual questions that preclude summary judgment in Spencer's favor. For instance, Spencer alleged that he told Bennett to drop the knife five or six times, *see* Pl.'s App. 029, but Bennett's neighbor and witness to the incident Maurice Bunche testified he heard only one such command, *see id*. at 022. Spencer claims Bennett responded to his commands by yelling "Fuck you," Spencer's App. 003, while Bunche testified that he did not hear this, *see* Pl.'s App. 022. Finally, Spencer also alleges Bennett, while within twenty feet of the officers, clenched the knife tightly and moved it slightly, as

if beginning to attack, *see* Spencer's App. 003, whereas Bunche testified he did not see Bennett make any movement at all, *see* Ptf.'s App. 022.  Importantly, the surveillance video is also indeterminate as to whether Bennett moved at all, and at what distance he was standing from the officers prior to being shot.  Surveillance Video at 12:20:15.

      The Court finds that resolution of whether Spencer acted reasonably in using lethal force on Bennett depends on answers to the fact questions outlined above.  If some or all of these questions are answered in Bennett's favor – if the officers told Bennett only once to drop his knife, if he was thirty feet from the officers, if he did not respond to officers' commands with expletives, and if he did not make any threatening movement toward the officers – then a jury could find that Spencer did not act reasonably in using lethal force. *See, e.g.*, *Zulock v. Shures*, 441 F. App'x 294, 302–03 (6th Cir. 2010) (officer not entitled to summary judgment where he shot plaintiff from 18 or 20 feet, plaintiff held a cooking knife, had told the officer "fuck you" but was in the process of turning away from the officer); *Jennis v. Rood*, 310 F. App'x 439, 441 (2d Cir. 2009) (plaintiff stated excessive force claim against officers who shot him where he alleged he was at a distance of 25 feet from officers, holding an axe, had committed a robbery, but was not acting violently at the time he was shot); *Walker v. City of Orem*, 451 F.3d 1139, 1159–60 (10th Cir. 2006) (officer not entitled to summary judgment where he shot suicidal plaintiff who had just been involved in a police chase from a distance of twenty-one feet while plaintiff held a knife but was not threatening or advancing on anyone); *cf. Mace v. City of Palestine*, 333 F.3d 621, 624–25 (5th Cir. 2010)

(officers acted reasonably in shooting intoxicated, uncooperative plaintiff who was advancing toward officers in a confined space holding a sword above his head).

*2. Bennett's Right Was Clearly Established.* – In addition to demonstrating a constitutional violation, Bennett also demonstrates that the right was clearly established.  At a general level, it is clearly established law that an individual has a right to be from excessive force.  *Bush v. Strain* 513 F.3d 492, 502 (5th Cir. 2008).  At a more particularized level, it is well established in this Circuit that "deadly force violates the Fourth Amendment *unless* 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]"  *Bazan ex rel Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Garner*, 471 U.S. at 11).  Thus, having identified a fact question as to whether Spencer was in reasonable fear for his safety or the safety of others when he shot Bennett, the Court denies Spencer's motion for summary judgment as to Bennett's excessive force claim.  *See Flores*, 381 F.3d at 402 (noting whether officer reasonably perceived a threat of danger is a question of fact).

### B. Bennett's False Arrest Claim

Bennett's false arrest claim is based on statements Spencer allegedly made to other officers responding to the scene immediately after the shooting.[11]

---

[11]Bennett also contends Spencer made false statements in an affidavit concerning the shooting, *see* Pl.'s Resp. Spencer's Mot. Summ. J. 12–13 but the evidence indicates the affidavit was given after the arrest warrant was issued.  Accordingly, Spencer's affidavit, even if false, could not have caused Bennett's arrest.

***1. Bennett Establishes a Violation of a Clearly Established Constitutional Right.* –** Bennett adduces evidence that tends to indicate Spencer provided false statements to other officers and supervisors arriving on scene. As discussed above in the factual discussion, Spencer told an Officer Spearman who arrived on scene that Bennett had come at him with a knife. Spencer gave the same explanation to a Sergeant Harry, who also arrived on scene immediately following the shooting. Although Spencer denies he made these statements, *see* Pl.'s App. 030, the deposition testimony of Officer Spearman and Sergeant Harry at the least creates a fact question as to whether Spencer made false statements immediately following the shooting. Moreover, Bennett provides evidence that Spencer's false statements materially contributed to the probable cause affidavit and the eventual issuance of Bennett's arrest warrant. *See id.* at 118–119 (referencing Spencer as the complainant and attributing various allegations against Bennett to him).

Under the second prong of the *Franks* analysis, the Court concludes the affidavit in support of the arrest warrant, stripped of Spencer's allegedly false statements, would not have supported probable cause to arrest Bennett for aggravated assault on a public servant. As with Watson's alleged false statements, Spencer's statements that Bennett advanced toward the officers while holding a knife were referenced and relied upon in the affidavit supporting the warrant. Without them, a charge for aggravated assault on a public servant would not lie. Accordingly, the Court concludes Spencer's alleged false statements were material.[12]

---

[12]Like Watson, Spencer also attempts to argue that regardless of whose version of facts the Court accepts, the officers had probable cause to arrest Spencer for something. *See* Br. Supp. Spencer's Mot. Summ. J. 9 [33]. For the same reasons discussed above, the Court

Finally, the Bennett's alleged constitutional violation was clearly established. As discussed above in reference to Bennett's false arrest claim against Watson, the intentional or reckless provision of false statements that result the in the issuance of an arrest warrant constitutes a Fourth Amendment violation. *Franks*, 438 U.S. at 171; *Hart*, 127 F.3d at 448. Moreover, *Hart* and *Franks* make plain that the right to be free from seizure based on intentionally or recklessly false statements by police is clearly established. *Hart*, 127 F.3d at 448–49 ("A government official violates the Fourth Amendment when he deliberately or recklessly provides false, material information for use in an affidavit in support of a search warrant, regardless of whether he signs the affidavit.").

## CONCLUSION

For the foregoing reasons, the Court denies Moving Defendants' motions for summary judgment.

Signed March 11, 2015.

_____
David C. Godbey
United States District Judge

---

rejects this argument. In addition, the Court concludes that a determination of whether a reasonable officer could have believed he had probable cause to conduct an arrest for any offense depends on factual questions that are currently unresolved. If Bennett did not respond aggressively to the officers, did not threaten them or advance toward them, then the Court struggles to see how a reasonable officer could have believed he had probable cause to conduct an arrest, even acknowledging Bennett was in possession of a knife. Spencer does not convincingly articulate a reason for concluding otherwise.